**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES E. ROSE, JR.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-0875** |
| | : | |
| **GLENN GUANOWSKY, ESQ.,** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS**                                          **NOVEMBER  17, 2021**

This matter comes before the Court by way of a Complaint (ECF No. 2) submitted by *pro se* Plaintiff James E. Rose, Jr., a regular, and prolific, litigant in this Court, against Glenn Guanowsky, Esq., Deputy General Counsel for Litigation and Risk Management with the Lehigh Valley Health Network ("LVHN").  Also before the Court is Rose's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1).  For the following reasons, the Court will grant Rose leave to proceed *in forma pauperis* and dismiss his Complaint with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.      FACTUAL ALLEGATIONS**

Rose's Complaint in this action is a ten-page, single-spaced typed document that is largely not set forth in numbered paragraphs.  The majority of Rose's Complaint attempts to set forth a chronological account of the events at issue by describing the content of approximately 12-15 different letters exchanged between Rose, Defendant Guanowsky, non-party Dr. Jennifer O. Langstengel, and other non-parties in the fall of 2020.  (*See* ECF No. 2 at 2-5).  Rose attached nearly forty pages of these letters as Exhibits to his Complaint.  (*See* ECF No. 2-1 at 2-39.) Despite Rose's attempts to provide the Court with the necessary factual allegations and

1

background information in his case, the factual basis for Rose's claims is disorganized and unclear.  The Complaint contains many long, confusing, narratives about Rose's medical treatment by Dr. Langstengel and what impact that may or may not have had on Rose's handling of retail theft charges he faced in the Lehigh County Court of Common Pleas.

However, having reviewed the Complaint and the attached letters in detail, the Court has discerned the following relevant factual background in this case.  Initially, it appears that Dr. Langstengel, a doctor of internal medicine employed by LVHN, was Rose's personal physician for an unspecified period until approximately October or November of 2020.  (ECF No. 2 at 2.) During the time that Dr. Langstengel treated Rose, she prescribed Rose several medications, including a prescription for irbesartan to treat Rose's high blood pressure.  (*Id.*)  However, at some point before October 22, 2020, Rose attempted to obtain a refill of his irbesartan prescription but he was informed by the pharmacist at Walgreens that an individual by the name of "Min" from Dr. Langstengel's office "had cancelled" his prescription.  (*Id.*)  It appears that as a result, Rose was left without his blood pressure medication for about four to five days leading up to October 22, 2020.  (ECF No. 2-1 at 4.)

As the Court understands Rose's allegations, the fact that he was without his blood pressure medication for a period up to and including October 22, 2020 is relevant because Rose entered into a plea agreement on the retail theft charge on that date.  Specifically, public records reflect that Rose entered a guilty plea on October 22, 2020 to one count of retail theft by under ringing in violation of 18 Pa. S. A. § 3939(a)(4).  *See Commonwealth v. Rose*, MJ-31302-NT-0000399-2020 (C.P. Lehigh County).  Rose alleges that because he was not on his blood pressure medicine during the October 22, 2020 proceedings in Lehigh County, he was "a hot mess[,]" that he "did not have all [his] faculties[,]" and that he was not of "normal mind" at the time.  (ECF

No. 2-1 at 4.)  Rose claims that he "was very, very dizzy" on that day and "got confused" during those proceedings – thinking that the charge against him was being dropped and that pleading to a summary offense meant he would only get "a citation, like a ticket."  (*Id.*)  Rose contends that because he was not "of sound body and sound mind[,]" he "ended up [p]leading guilty to a Summary Offense that [he] did not do."[1]  (*Id.*)

A few weeks later, on or about November 3, 2020, Rose filed a motion in the Lehigh County Court of Common Pleas seeking to withdraw his guilty plea.  *See Commonwealth v. Rose*, CP-38-MD-0001962-2020, (C.P. Lehigh County).  Shortly before he filed that motion, it appears that Rose contacted Dr. Langstengel by letter dated November 2, 2020 regarding "Blood Pressure Verification[.]"  (ECF No. 2-1 at 4.)  In that letter, Rose specifically asked Dr. Langstengel for "a statement . . . verifying that without that medication there is no way [he] can be mentally stable" and "verify[ing] that [he] was without [his] medicine during the course of this [October 22, 2020] Proceeding."  (*Id.*)  After receipt of this letter, it appears that Dr. Langstengel informed Rose by letter dated November 10, 2020 that she would no longer continue treating him as a patient.  (ECF No. 2 at 3.)  Rose, who claims he did not understand why Dr. Langstengel was "kicking [him] out of the Practice[,]" continued writing letters to Dr. Langstengel about her decision to terminate him as a patient and his prior request for a statement verifying the blood pressure medication issues.  (ECF No. 2-1 at 5-8, 11.)  Rose wrote directly to the CEO of LVHN on several occasions, and cc'd the CEO on several of his letters to Dr. Langstengel.  (*Id.* at 9, 12.)

---

[1]  It appears that Rose was represented by an attorney at the time he entered his guilty plea on October 22, 2020.  (*See* ECF No. 2-1 at 9) ("I allowed my Attorney to talk me into Pleading Guilty to a Summary Offense which I knew nothing about.").)

After several weeks of letters from Rose to Dr. Langstengel and the CEO of LVHN, Defendant Guanowsky, in his role as Deputy General Counsel for Litigation and Risk Management, sent a letter to Rose dated November 23, 2020. (*Id.* at 10.)  In that letter, Guanowsky informed Rose that he was responding on behalf of LVHN's "Senior Leadership" with respect to Rose's request for a new primary care provider and explained that it was Rose's sole responsibility to find a new provider. (*Id.*)  Guanowsky also advised Rose that he was "not to communicate further with members of Senior Leadership regarding these matters" and that any "further communication [would] be deemed harassment" requiring Guanowsky's office to take "necessary measures." (*Id.*)  Guanowsky's November 23, 2020 letter appears to have prompted Rose to send multiple letters to Guanowsky, Dr. Langstengel, and others – most of which assert Rose's belief that Guanowsky was attempting to infringe on Rose's First Amendment rights and his belief that he is being "mistreated" because he is Black.[2]  (*See Id.* at 13-19,  21-35.)

Rose contends that as a results of these events, he is now without a doctor to treat him for various illnesses. (ECF No. 2 at 5.)  Rose claims that Defendant Guanowsky "had no legal

---

[2] In response to Rose's continuing correspondence, Guanowsky wrote another letter to Rose dated December 9, 2020 which provides in pertinent part:

> As stated in my letter dated November 23, 2020 you were directed to stop harassing our Senior Leadership in regards to Dr. Langstengel's decision to stop being your provider.  The reasons are well known to you.  You were non-compliant with monitoring.  You subsequently sought to have Dr. Langstengel make a false statement to the Court after she made the medical[ly] appropriate decision not to prescribe dangerously high doses of blood pressure medication given your non-compliance.
>
> For these reasons, Dr. Langstengel could not maintain a therapeutic relationship with you and discharged you as a patient.  Please be advised that legal action will be taken if you make any further attempt to communicate with our Senior Leadership.

(ECF No. 2-1 at 20.)

authority to write any threatening letters to" Rose, an elderly Black man, and that Guanowsky

"displays . . . how White Supremacy and white Racism is enforced in Lehigh County, PA and in

particular, at LVHN." (*Id.* at 8.)  Rose seeks an order against Defendant Guanowsky for

"violating Plaintiff's Civil Rights" and seeks an award of $250,000 in punitive damages and

$250,000 in nominal damages for these "flagrant Civil Rights Violations." (*Id.*)

## II.    STANDARD OF REVIEW

The Court will grant Rose leave to proceed *in forma pauperis* because it appears that he

is not capable of paying the fees to commence this civil action.  Accordingly, Rose's Complaint

is subject to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Complaint if

it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is

governed by the same standard applicable to motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which

requires the Court to determine whether the complaint contains "sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quotations omitted).   "At this early stage of the litigation,' '[the Court

will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences

in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . .

contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366,

374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Rose is proceeding *pro se*, the

Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021)

(citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

III.    DISCUSSION

Rose repeatedly alleges that the Complaint in this case is "for Federal Civil Rights

Violations[,]" (*see* ECF No. 2 at 1, 2, 8), but he explicitly disclaims this action as one brought

pursuant to 42 U.S.C. § 1983.  (*See id.* at 1) ("This is not a Claim Under Title 42 SS 1983[.]")

Rather, Rose seeks to bring claims pursuant to 42 U.S.C. §§ 1981, 1985, 1986.  (*Id.* at 2.)  The

Court address each in turn.

A.    Rose's Claims Under § 1981

Section 1981 prohibits race discrimination in the making and enforcement of contracts.

*See* 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the

same right in every State and Territory to make and enforce contracts, to sue, be parties, give

evidence, and to the full and equal benefit of all laws and proceedings for the security of persons

and property as is enjoyed by white citizens, and shall be subject to like punishment, pains,

penalties, taxes, licenses and exactions of every kind, and to no other.").  This Reconstruction-

era statute, along with several others, was enacted to effectuate the aims of the Thirteenth and

Fourteenth Amendments to the Constitution.  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796-97

(3d Cir. 2001) (noting that the legislative history of § 1981, derived from the Civil Rights Act of

1866 and from the reenactment of Section 1 of the 1866 Act in 1870, makes clear Congress's

intent to enact "sweeping legislation implementing the [T]hirteenth [A]mendment to abolish all

the remaining badges and vestiges of the slavery system") (quoting *Mahone v. Waddle*, 564 F.2d

1018, 1030 (3d Cir. 1977)).  To state a claim under § 1981, a plaintiff "must allege facts in

support of the following elements:  (1) [that plaintiff] is a member of a racial minority; (2) intent

to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or

more of the activities enumerated in the statute[,] which includes the right to make and enforce

contracts . . . ."  *Brown*, 250 F.3d at 797 (alterations in original) (quoting *Yelverton v. Lehman*, No. Civ. A. 94-6114, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1996), *aff'd. mem.*, 175 F.3d 1012 (3d Cir. 1999)).

Rose's Complaint asserts that Defendant Guanowsky is a "White Racist" who is "attempting to practice jiggaboo law" because Guanowsky believes he can "treat . . . [Rose] like [Rose] [is] no more than a 'stupid N[*&&$^]'."[3]  (ECF No. 2 at 6.)  Rose contends that in the November 23, 2020 letter, Guanowsky "threatened" that if Rose exercised his First Amendment Rights by "contacting a White Man for help then the 'N[*&&$^]' man should be arrested for harassment when this retarded Defendant knows full well his remarks clearly indicate that he is a White Racist." (*Id.*)  Throughout the remainder of the Complaint, Rose asserts that Guanowsky is a white racist and a white supremacist who is attempting to restrict Rose's First Amendment rights in an effort to enforce white racism and white supremacy.  (*Id.* at 6-8.)  Rose concludes by comparing himself to George Floyd because, like Floyd, Rose "cannot breathe because, [he] has been stripped of his Civil Rights and Liberties."[4]

Despite Rose's repeated use of racial epithets and language designed to describe racial animus, Rose does not actually allege that Defendant Guanowsky committed any intentional act to discriminate against him based on his race with respect to the end of Rose's treatment by Dr. Langstengel or Rose's need to obtain a new primary care provider.  Rose alleges that as an

---

[3]  For purposes of this Memorandum, the Court will refrain from the use of racial epithets and simply note that they are present in Rose's Complaint.

[4]  The letters Rose attached as exhibits to his Complaint also contain repeated use of racial epithets and make similar conclusory, impertinent allegations against Defendant Guanowsky, and include the use of inflammatory language, like references to the "Ku Klux Klan", the "Third Reich", and what "Joesef Mangela [sic]. . . did to the Jews[.]" (*See generally* ECF No. 2-1 at 13-17, 21-23, 28-34.)

African American he suffered unlawful discrimination, (*see* ECF No. 2 at 6-8), but he does not explain what facts or circumstances support his conclusion.  Rather, Rose relies on conclusory allegations of generalized racial bias, which are insufficient to satisfy the elements of a claim under § 1981.  *See Spence v. Caputo*, Civ. A. No. 12-1077, 2015 WL 630294, at *27 (W.D. Pa. Feb. 12, 2015) (dismissing § 1981 and § 1982 claims because plaintiff's claims were mere speculation and did not allege which of the enumerated rights under these sections were allegedly violated, which defendants were involved, the dates that any violations occurred, nor were facts alleged to show that any deprivation of the enumerated rights was racially motivated); *see also Davis v. Samuels*, 962 F.3d 105, 115-16 (3d Cir. 2020) (affirming dismissal on the merits of plaintiff's § 1981 claim against federal defendants for failure to state a plausible claim of race discrimination).  Moreover, Rose's Complaint lacks any plausible allegation that the alleged discrimination concerned one or more of the activities enumerated in the statute, such as the making or enforcement of contracts.  Accordingly, Rose's claim has failed to state a plausible claim under § 1981.  This claim will be dismissed with prejudice as any attempt to amend would be futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend claims dismissed on screening should be generally be granted "unless amendment would be inequitable or futile.")

**B.    Rose's Claims Under § 1983**

Although Rose explicitly disclaims that he seeks to bring this action pursuant to § 1983, the allegations of the Complaint, construed liberally, could fairly be understood as an attempt to bring a claim against Defendant Guanowsky for violating Rose's First Amendment rights by somehow attempting to restrict or limit Rose's speech to various employees at LVHN pursuant

42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Whether a defendant is acting under color of state law — *i.e.*, whether the defendant is a state actor — depends on whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). Pursuant to § 1983, action under color of state law requires that the one liable under that statute have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011).

"It is axiomatic that the First Amendment governs only state action, not the actions of private [actors and] entities." *Max v. Republican Comm. of Lancaster Cty.*, 587 F.3d 198, 200 (3d Cir. 2009).  The Supreme Court has made clear that "a private entity may qualify as a state actor when it exercises 'powers traditionally exclusively reserved to the state.'" *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345 (1974)).  Moreover, "the fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor – unless

9

the private entity is performing a traditional, exclusive public function. The same principle

applies if the government funds or subsidizes a private entity." *Id.* at 1931-32 (internal citations

omitted). Private hospitals, no matter how much federal funding they may receive, are generally

not state actors for purposes of constitutional questions. *See, e.g. Thomas v. Nationwide*

*Children's Hosp.*, 882 F.3d 608, 612 (6th Cir. 2018).

To the extent Rose's Complaint could be construed as seeking to bring a § 1983 claim

against Guanowsky for allegedly violating Rose's First Amendment rights (or any other

constitutional rights), Rose has not  plausibly alleged facts demonstrating that Guanowsky is a

state actor.  The Complaint and the attached Exhibits make clear that Guanowsky is Deputy

General Counsel for Litigation and Risk Management LVHN.  LVHN is a private healthcare

system, and there are no allegations in the Complaint that LVHN has any connection to a state,

county, or local government entity which suggest that its private business conduct can be treated

as that of the state.  The same is true with respect to Guanowsky in his role as Deputy General

Counsel for LVHN.  Rose does not allege that Guanowsky has any connection to a state, county,

or local government entity.  Moreover, even assuming the LVHN receives any federal funding,

that alone is insufficient to convert Guanowsky into a state actor for purposes of a § 1983 claim.

Accordingly, any claims Rose seeks to bring against Guanowsky under § 1983 will be dismissed

with prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim.  Rose will not be

granted to leave to amend on this issue as any attempt to amend would be futile.

### C.    Rose's Conspiracy Claims Under §§ 1985 and 1986

Rose asserts that he is bringing claims pursuant to §§ 1985 and 1986.  (ECF No. 2 at 2.)

42 U.S.C. § 1985(3) creates a cause of action against persons who "conspire . . . for the purpose

of depriving, either directly or indirectly, any person or class of persons of the equal protection

of the laws, or of equal privileges and immunities under the laws. . . ." 42 U.S.C. § 1985(3).  To

state a plausible claim under § 1985(3) a plaintiff must allege the following elements:  (1) a

conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive,

directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act

in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any

right or privilege of a citizen of the United States.  *Lake v. Arnold*, 112 F.3d 682, 685 (3d

Cir.1997).  Significantly, "'[t]he [statutory] language requiring intent to deprive of equal

protection . . . means that there must be some racial . . . invidiously discriminatory animus

behind the conspirators' action.'"  *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-*

*CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102

(1971).  Moreover, a plaintiff must allege specific facts to sustain a § 1985(3) claim:

> With near unanimity, the courts have rejected complaints containing mere
> conclusory allegations of deprivations of constitutional rights protected under §
> 1985(3).  A conspiracy claim based upon § 1985(3) requires a clear showing of
> invidious, purposeful and intentional discrimination between classes or
> individuals.

*Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972); *see also Grigsby v. Kane*, 250 F. Supp.

2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those

addressing the period of the conspiracy, the object of the conspiracy, and actions taken in

furtherance of the conspiracy, will be deemed sufficient.")

   "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from

which a conspiratorial agreement can be inferred."  *Great W. Mining & Mineral Co. v. Fox*

*Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "[A] bare assertion of conspiracy will not

suffice."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "[Section] 1986 constitutes an

additional safeguard for those rights protected under 42 U.S.C. § 1985, and 'transgressions of §

11

1986 by definition depend on a preexisting violation of § 1985." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)). In other words, "to maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy." *Id.* at 1295 n.5.

Rose's Complaint does not allege a plausible claim under § 1985.  At the outset, the Court notes that the Complaint itself does not even contain the word conspiracy or conspire, and makes only one passing reference to § 1985 in its jurisdictional paragraph.[5]  Rose has not alleged a single factual detail regarding the formation of a conspiracy between Defendant Guanowsky and any other individual.  Leaving aside Rose's conclusory allegations, impertinent characterizations, and his use of racial epithets and other inflammatory language in the Complaint, Rose completely fails to specify the nature and purpose of any alleged conspiracy against him, nor does he plausibly allege a conspiracy against him based on his race or membership in a class.  Accordingly, these claims are also implausible and will be dismissed with prejudice.  *Cf. Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 592 (D.N.J. 2003), aff'd, 137 Fed. Appx. 482 (3d Cir. 2005) (dismissing § 1985 conspiracy claim for failure to state a claim where plaintiff, an indigent, African-American woman, asserted that a medical center and several doctors conspired to deprive her of her Medicaid benefits because she did "not provide a factual basis for her claims that the alleged conspiracy was motivated by 'racial ... or otherwise class-based' animus.").  Because Rose has failed to allege the existence of a § 1985

---

[5]  In Rose's December 15, 2020 letter to Defendant Guanowsky, Rose states that Guanowsky is "no more than a coconspirator who had a meeting of the minds with Dr. Langstengel to come up with this diabolical defense by stating a 'N[*&&#$' wanted a white doctor to tell the [Lehigh County Common Pleas] Court a lie."  (ECF No. 2-1 at 33.)  This passing reference to Guanowsky as a "coconspirator" and a "meeting of the minds" between Guanowsky and Dr. Langstengel in a letter predating the initiation of this litigation is insufficient to allege a plausible claim under § 1985.

12

conspiracy, he also cannot maintain a plausible § 1986 claim and this claim will similarly be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim.  As any attempt to amend either the § 1985 or § 1986 claim would be futile, Rose will not be granted leave to amend these claims.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will grant Rose leave to proceed *in forma pauperis*, dismiss his Complaint with prejudice in its entirety pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim.  He will not be given leave to file an amended complaint, because it appears that any attempt to cure the defects in his claims would be futile.  An appropriate Order follows.

**BY THE COURT:**


**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**